**Jeffrey M. Edelson, OSB #88040**
JeffEdelson@MHGM.com
**Stacy R. Owen, OSB #074826**
StacyOwen@MHGM.com
**Shannon Armstrong OSB #060113**
ShannonArmstrong@MHGM.com
MARKOWITZ, HERBOLD, GLADE
 & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, OR  97204-3730
Tel:  (503) 295-3085
Fax:  (503) 323-9105

> Attorneys for Defendant/Counterclaim-Plaintiff
> Fieldturf USA, Inc., and Defendant Fieldturf Tarkett
> USA Holdings, Inc.

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **FIELD TURF BUILDERS, LLC**, an Oregon limited liability company; **MARK RYAN**, | CV No.: CV 09 671 HZ |
| Plaintiffs, | **Defendant/Counterclaim-Plaintiff Fieldturf USA, Inc., and Defendant Fieldturf Tarkett USA Holdings, Inc.'s MEMORANDUM IN OPPOSITION to Plaintiffs'/Counterclaim-Defendants' Motion to Compel Production and Order that Participants be Made Available for Depositions** |
| vs. | |
| **FIELDTURF USA, INC.**, a Florida corporation; **FIELDTURF TARKETT USA HOLDINGS, INC.**, a foreign corporation; **JOE FIELDS**; **MICHAEL MCNEIL**, | |
| Defendants. | Request for Oral Argument |
| **FIELDTURF USA, INC.**, a Florida Corporation, | |
| Counterclaim-Plaintiff, | |
| vs. | |
| **CRYSTAL RYAN, BOECKMAN PROPERTIES, LLC**, an Oregon limited liability company, and **GULF PACIFIC CO.**, an Oregon corporation, | |
| Additional Counterclaim-Defendants. | |

**Page 1 -  DEFENDANTS'/COUNTERCLAIM-PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL**

## INTRODUCTION

Plaintiffs' Motion to Compel Production lacks legal support and is unnecessary.  It lacks legal support because the documents plaintiffs seek were prepared by counsel for defendant FieldTurf USA, Inc. during a time when litigation was a possibility, so these documents fall squarely within the work product doctrine.  Plaintiffs' motion regarding the identity of certain employees of Atlas Track & Tennis, Inc. ("Atlas") is unwarranted because defendants did, and continue to, work cooperatively to provide that information to plaintiffs.

Further, in contravention of Local Rule 7-1(a), plaintiffs did not confer with defendants prior to moving to compel information regarding the Atlas employees.  Pursuant to Local Rule 7-1(a)(2), the court should deny that motion.

## BACKGROUND INFORMATION

Robert Carey and Kurt Ruttum of the Tonkon Torp law firm were retained in early February 2009 to represent defendant/counterclaim-plaintiff FieldTurf USA, Inc. ("FTUSA") in a potential deal that was being negotiated between plaintiffs Fieldturf Builders, LLC ("Builders"), its president Mark Ryan and FTUSA.  (Declaration of Robert Carey in Support of Opposition to Motion to Compel ("Carey Decl.") ¶¶ 2, 3.)  The parties had begun negotiations in the preceding year (M. Ryan Dep. Vol. I at 62:2-19; Fields Dep. 46:6-47:18, 49:14-17) [1], but when issues became more complex as Builders' financial woes came to light, FTUSA decided it needed attorney assistance to navigate the issues complicating the potential deal.  (Ex. 1, 4:33 p.m. 02/12/2009 Joe Fields/Michael Levasseur, et al. email.)  For example, before Messrs. Carey and Ruttum were retained, FTUSA had discovered that Builders was subject to a $994,000 lien from the Internal Revenue Service ("IRS") and a smaller lien from the State of Oregon and that the IRS lien was threatening the ability to complete the Marina Vista Elementary School installation project in Pittsburgh, California.  (Ex. 2, 10/17/2008 Mark Ryan/Michel Levasseur emails; Ex. 3, 10/10/ 2008 Jim Mendenhall/Joe Fields email; Ex. 4, 02/03/2009 Michel Levasseur/Joe Fields emails.)  Before Messrs. Carey and Ruttum began their work, a $263,000

---

[1] Unless otherwise noted, all exhibits and deposition excerpts are attached to the Declaration of Stacy R. Owen in Support of Opposition to Motion to Compel ("Owen Decl.").

judgment had already been entered against Builders in a lawsuit in California brought by a union trust fund, and Mr. Ryan, in stipulating to the judgment, had implicated FTUSA.  (Ex. 5, Notice and Acknowledgment and Judgment Pursuant to Stipulation, USDC-ND CA Case No. C08-5255 WHA, Jan. 28, 2009.)  As the result of Mr. Ryan's stipulation and due to Builders' failure to pay the stipulated amount, FTUSA is litigating this claim in California.  (Ans. ¶ 110.)  When Messrs. Carey and Ruttum began their engagement, the parties were scrambling to ensure that several ongoing installation projects would be completed despite Builders' financial troubles.  (Ex. 1.)

Throughout Messrs. Carey's and Ruttum's engagement, they and others at the Tonkon Torp firm researched and analyzed the various Builders' issues affecting the potential deal.  (Carey Decl. ¶¶ 5, 7.)  Relatedly, the Tonkon Torp firm researched and analyzed FTUSA's potential liability as the result of its relationship to Builders on installation projects, at times acting as Builders' general contractor and at other times acting as Builders' subcontractor.  (*Id*.)  Builders' issues, which were also FTUSA's concern as the result of the parties' relationship and the potential deal, included, but were not limited to, the IRS and other taxing authority liabilities, the various union claims for wages, employee benefit contributions, and trust fund contributions, as well as various claims related to various pieces of equipment.  (*Id*. ¶ 5; Ex. 6, 6/17/11 Camire Declaration in Support of Motion for Summary Judgment ("Camire Decl."), *passim*.)

## ARGUMENT

I.    **The Tonkon Torp documents sought by plaintiffs are protected by work product doctrine.**

A.    **The work product doctrine described.**

The purpose underlying the work product doctrine is explained by the United States Supreme Court in *Hickman v. Taylor*:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The work product doctrine is codified in the Federal Rules of Civil Procedure in Rule 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial . . . ."

Plaintiffs cite *Umpqua Bank v. First Am. Title Ins.*, a United States District Court decision from California, in connection their definition of the phrase "anticipation of litigation," and note that in order for a document to be protected by the work product doctrine, when an attorney prepares a document, the attorney "must at least have had a subjective belief that litigation was a real possibility and that belief must have been objectively reasonable." *Umpqua Bank v. First Am. Title Ins. Co.*, 2011 WL 997212, *1, *4 (E.D. Cal. Mar. 17, 2011). Here, in the United States District Court in Oregon, the court has considered that phrase and has explained that "litigation need not be commenced" there just needs to be "some possibility of litigation." *Sellers v. Internal Revenue Serv.*, 2009 WL 700647 *1, *13 (D. Or. Mar. 17, 2009).

In reaching its holding, the *Sellers* court cited with approval *In re Sealed Case*, 146 F.3d 881 (D. D.C. June 19, 1998). In *Sealed Case*, the court considered the situation of an attorney who was not litigating a case, but was rendering legal advice intended to protect a client from future litigation, even when no specific claims had been made. *Id.*, 146 F.3d at 885. In reversing and remanding the district court's decision that certain documents were not protected by the work product doctrine, the *Sealed Case* court noted:

> If lawyers had to wait for specific claims to arise before their
> writing could enjoy work-product protection, they would not likely
> risk taking notes about such matters or communicating in writing
> with colleagues, thus severely limited their ability to advise clients
> effectively.

*Id*. at 886.

In the situation where there may be two purposes for the creation of a document – to aid a client in making a business decision and because of the prospect of future litigation – the Ninth Circuit considers the "totality of the circumstances" surrounding the creation of a document. *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). In *Grand Jury*, the court explained "totality of the circumstances" by quoting from Wright & Miller: " ' the nature of the document

and the factual situation of the particular case' are key to a determination of whether work product applies." *Grand Jury*, 357 F.3d at 908 (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 FEDERAL PRACTICE & PROCEDURE, § 2024 (2d ed. 1994)).

Finally, Rule 26(b)(3)(A)(ii) provides for discovery in limited circumstances, and the party seeking material covered by the work product doctrine must show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." However, if a court orders a party to produce such materials, Rule 26(b)(3)(B) still requires protection "against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

> **B.    At all times during, there was a real possibility of litigation involving issues related to the parties' potential deal.**

The California judgment stipulated to by Mr. Ryan prior to the hiring of Tonkon Torp stemmed from Builders' liability to a union trust fund in California. Several similar trust fund issues were being actively litigated during the time when Tonkon Torp was advising FTUSA regarding its potential deal with Builders. (Carey Decl. ¶ 6.)

Throughout its representation of FTUSA, the Tonkon Torp firm was always concerned for FTUSA about the possibility of litigation against FTUSA due to Builders' various liabilities and FTUSA's relationship to Builders. (*Id.* ¶ 8.) For example, due to the parties' very similar names, there was always a threat that FTUSA would be implicated in litigation. (*Id.*) And, during its representation of FTUSA on this acquisition matter, the Tonkon Torp firm advised FTUSA client of various strategies for protecting FTUSA's interests as the result of Builders' various liabilities. (*Id.* ¶ 9.) For example, even if litigation was active in connection with an installation project, in some instances the Tonkon Torp firm advised FTUSA that FTUSA's best option to protect its interests was to take over an installation project. (*Id.* ¶ 7.) And, at times, the Tonkon Torp firm analyzed whether to recommend the initiation of litigation on FTUSA's behalf. (*Id.* ¶ 9.)

Even acknowledging that the Tonkon Torp firm was engaged to assist the parties with finalizing their potential deal (Carey Decl. ¶ 2), Tonkon Torp's representation also included analyses of issues due to the constant threat and possibility of litigation. (*Id.* ¶¶ 5, 6, 7, 8, 9.) Here, considering the totality of the circumstances surrounding the negotiations to finalize the potential deal includes the consideration of countless thorny issues that could have given rise to litigation against FTUSA based upon Builders' liabilities and FTUSA's relationship to Builders on various installation projects. (*Id.*) In fact, the parties' relationship had already generated significant liabilities for FTUSA. (Ex. 6, *passim*.)

> **C.      Plaintiffs fail to explain their substantial need for these materials.**

Plaintiffs provide no explanation of a substantial need for these documents. Pursuant to Rule 26(b)(3)(A)(ii), plaintiffs must show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Plaintiffs' memorandum completely fails to address this requirement.

> **D.      Defendants have updated their privilege log.**

An updated and more detailed privilege log is attached as Exhibit 7 to the Owen Declaration and has been provided to plaintiffs apart from this filing.

**II.      Defendants have responded to plaintiffs' requests regarding Atlas employees and continue to work in good faith to obtain additional information requested by plaintiffs.**

> **A.      Plaintiffs failed to confer as required by the local rules.**

Local Rule 7-1(a) requires a moving party to have made a good faith effort to confer prior to filing a motion to compel production. Prior to filing its motion regarding the Atlas employees, plaintiffs failed to confer with defendants regarding its filing. (Declaration of Greg Scott in Support of Opposition to Motion to Compel ("Scott Decl.") ¶ 9.) As a result, pursuant to Local Rule 7-1(a)(2), the court should deny this motion.

**B.    Plaintiffs' motion is not necessary because defendants have already responded.**

Plaintiffs' motion is completely unnecessary.  Defendants have already provided the information that plaintiff formally requested and defendants continue to work in good faith in response to plaintiffs' informal requests.

On March 3, 2011, prior to any formal request for production by plaintiffs' counsel, defendants produced timesheets for all of the Atlas employees employed by Atlas on the date in question, March 27, 2099.  (Scott Decl. ¶ 3.)  Plaintiffs' Memorandum in Support of its Motion to Compel Production states that plaintiffs served a request for production of documents related these Atlas employees on defendants on January 20, 2011.  (Pls.' Mem. in Supp. of Mot. to Compel Produc. at 3.)  In actuality, the date of service was March 4, 2011.  (Ex. 8, Pls.'/Countercl. Defs.' Third Req. for Produc. of Docs. at 10.)  As a result of defendants' informal production, when plaintiffs served their formal request, defendants responded that they had already produced the responsive documents.  (Ex. 9, Defs./Countercl. Pls.' Resp. to Pls.' Third Req. for Produc. of Docs. at 8-9.)

Subsequent to defendants' production, plaintiffs' counsel informally requested additional information and defendants responded to those requests.  (Scott Decl. ¶ 5.)

On June 7, 2011 Messrs. Currie and Greene met with Messrs. Edelson and Scott regarding discovery issues.  (*Id*. ¶ 8.)  During the meeting on June 7, 2011, Mr. Scott shared with plaintiffs' counsel information that Mr. Scott had recently obtained information to allow plaintiffs to determine which Atlas employees were involved in the events of March 27, 2009.  (*Id*. ¶ 11.)  In other words, Mr. Scott provided information responsive to the information that plaintiffs now seek to compel.  The information that Mr. Scott shared limited the field of potential deponents to ten.  (*Id*. ¶ 15.)  In addition, counsel agreed to a plan to further narrow the field of potential deponents regarding the events of March 27, 2009, and defendants agreed to conduct additional investigations to inquire as to which individuals had played an organizational role on that day.  (*Id*. ¶ 10.)

**Page 7 -   DEFENDANTS'/COUNTERCLAIM-PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL**

During the June 7, 2011 meeting, counsel also discussed issues affecting defendants' response time, including vacation and trial schedules (*id.* ¶ 8), and Mr. Edelson expressed his willingness to agree to an extension of the discovery deadline, if necessary, to accommodate additional depositions.  (*Id.* ¶ 12.)

Days before plaintiffs filed the instant motion, Mr. Scott updated plaintiffs' counsel on his work to discover the event organizer(s) and reminded plaintiffs' counsel of his upcoming trial.  (*Id.* ¶ 13.)  In response, plaintiffs' counsel expressed no concerns.  (*Id.* ¶ 14.)

Defendants have worked in good faith to respond to plaintiffs' requests and continue to seek additional information.  As a result of defendants' good faith efforts and as a result of the fact that plaintiff did not confer with defendants regarding their motion to compel production of information regarding the Atlas employees, defendants were surprised by plaintiffs' instant motion.  From defendants' perspective, plaintiffs' instant motion is wholly unnecessary given the documents previously produced, as well as the ongoing cooperation among counsel.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion to compel should be denied.

DATED this 1st day of July, 2011.

MARKOWITZ, HERBOLD, GLADE
& MEHLHAF, P.C.


By:    */s/ Stacy R. Owen*
 Jeffrey M. Edelson, OSB #88040
 Stacy R. Owen, OSB #074826
 Shannon Armstrong, OSB #060113
 (503) 295-3085
 Of Attorneys for Defendant/Counterclaim-
 Plaintiff Fieldturf USA, Inc., and Defendant
 Fieldturf Tarkett USA Holdings, Inc.

FIELFI\259824

**Page 8 -   DEFENDANTS'/COUNTERCLAIM-PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO MOTION TO COMPEL**

## ATTORNEY CERTIFICATE OF SERVICE

    I hereby certify that on July 1, 2011, I have made service of the foregoing **DEFENDANT/COUNTERCLAIM-PLAINTIFF FIELDTURF USA, INC., AND DEFENDANT FIELDTURF TARKETT USA HOLDINGS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS'/COUNTERCLAIM-DEFENDANTS' MOTION TO COMPEL PRODUCTION AND ORDER THAT PARTICIPANTS BE MADE AVAILABLE FOR DEPOSITIONS** on the party/ies listed below in the manner indicated:

S. Ward Greene                 ☐ U.S. Mail
Charles R. Markley           ☐ Facsimile
Sean Currie                     ☐ Hand Delivery
Greene & Markley, P.C.       ☐ Overnight Courier
1515 SW Fifth Avenue, Suite 600   ☐ Email
Portland, OR  97201          ☒ Electronically via USDC CM/ECF system

Bonnie M. Richardson
Folawn Alterman & Richardson LLP
805 SW Broadway, Suite 2750
Portland, OR  97205

    DATED this 1st day of July, 2011.

                     */s/ Stacy R. Owen*
                     _____
                     Stacy R. Owen, OSB #074826
                     StacyOwen@MHGM.com
                     Attorney for Fieldturf USA, Inc. and Fieldturf
                     Tarkett USA Holdings, Inc.

**CERTIFICATE OF SERVICE**