IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

FIELD TURF BUILDERS, LLC, an                    No. 03:09-CV-671-HZ
Oregon limited liability company; MARK
RYAN,                                           OPINION & ORDER

            Plaintiffs,

        v.

FIELDTURF USA, INC., a Florida
corporation; FIELDTURF TARKETT USA
HOLDINGS, INC., a foreign corporation;
JOE FIELDS; MICHAEL MCNEIL,

                Defendants.


FIELDTURF USA, INC., a Florida
corporation,

            Counterclaim-Plaintiff,


1 - OPINION & ORDER

v.

CRYSTAL RYAN, BOECKMAN
PROPERTIES, LLC, an Oregon limited
liability company, and GULF PACIFIC CO.,
an Oregon corporation,

     Additional Counterclaim-Defendants.

S. Ward Greene
Charles R. Markley
Sean C. Currie
Greene & Markley, P.C.
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201

     Attorneys for Plaintiffs

Jeffrey M Edelson
Stacy Owen
Markowitz Herbold Glade & Mehlhaf, PC
1211 S.W. Fifth Avenue, Suite 3000
Portland, OR 97204

     Attorneys for Defendants

HERNANDEZ, District Judge:

     Defendants Fieldturf USA and Fieldturf Tarkett USA Holdings, Inc. (collectively

"FTUSA") move for summary judgment on all eight of plaintiffs' claims.  Plaintiffs Field Turf

Builders ("FTB") and Mark Ryan, and additional counterclaim-defendants Crystal Ryan,

Boeckman Properties, and  Gulf Pacific Co., (collectively "FTB et al") cross move for partial

summary judgment on two of its claims, all of defendant FTUSA's affirmative defenses, and five

of FTUSA's counterclaims.  I grant and deny in part FTUSA's motion for summary judgment.  I

also grant and deny in part FTB et al's motion for partial summary judgment.

BACKGROUND

2 - OPINION & ORDER

Defendant Fieldturf USA (FTUSA) is a subsidiary of FieldTurf Tarkett USA Holdings, Inc.  Compl. ¶2.  FTUSA is a 5% minority member of plaintiff FTB.  Answer ¶81.  FTB is owned and managed by co-plaintiff Mark Ryan.  Compl. ¶3.  Counterclaim-defendant Boeckman Properties is owned by Mark Ryan's wife, Crystal Ryan, also a counterclaim-defendant.  Def.'s Concise Statement of Material Facts ("Material Facts") ¶14.  FTB leased a facility in Wilsonville from Boeckman Properties and used it as its principal place of business.  Pl.'s Reply to Def.'s Answer ¶¶13-14.  Mark Ryan also owns and manages counterclaim-defendant Gulf Pacific Company, which performed financial services for FTB.  Id. at 49.

FTUSA manufactures and installs synthetic grass turf for landscaping and athletic fields throughout the United States.  Material Facts ¶1.  Over a ten-year period, FTB  worked with FTUSA as a contractor or subcontractor to install FTUSA's synthetic turf.  Id. at ¶2.  By 2008, FTB was installing 25-30% of FTUSA's products along the Western United States.  Def.'s Memo. in Supp. of Mot. for Summ. J. ("FTUSA MSJ") 4.  In fall 2008, FTUSA and Mark Ryan began discussions to integrate FTB into FTUSA.  Id. at 5.  On October 8, 2008, FTUSA learned that the IRS had imposed a $994,447 lien against FTB for unpaid taxes.  Id.  Mark Ryan assured FTUSA that the lien would be resolved.  Decl. of Stacy Owen in Supp. of FTUSA MSJ ("Owen Decl.") Ex. 2.  The negotiations continued.  On January 18, 2009, the chief financial officer of FTUSA sent Mark Ryan an email in which he confirmed "an agreement at $2,150,000" to purchase FTB's assets and a consulting contract for Mark Ryan.  Owen Decl. Ex. 4 at 1.  FTUSA's CFO stated that approval from the board of directors was still needed.  Id.

On February 3rd, FTUSA learned that the IRS tax lien was still unresolved.  FTUSA MSJ 7.  Six days later, FTUSA hired attorneys to work with Mark Ryan's attorney to prepare the

3 - OPINION & ORDER

documents for the deal.  Id.  On February 20th, Mark Ryan told FTUSA that he could not cover

his payroll because of a levy by the state of Washington and asked FTUSA hire his employees

immediately.  Id. at 8.  Mark Ryan and FTUSA agreed that FTUSA would take over FTB's

payroll and the Boeckman facility in Wilsonville.  Id.  Mark Ryan allowed FTUSA the use of

FTB's equipment and business records as they continued to finalize the agreement in writing.

Pl.'s Memo. in Opp'n to FTUSA MSJ ("FTB Opp'n") 6.  By February 23rd, FTB was no longer

operating, and FTUSA had taken over all installation projects.  FTUSA MSJ 9.

    After FTUSA took over the Boeckman facility, the parties continued to work towards

finalizing the deal in writing.  Id. at 10.  In the early morning hours of March 27th, FTUSA

removed all the equipment, tools, computers, and files from the Boeckman facility without

giving notice to Mark Ryan.  Id. at 11.  According to FTUSA, the March 27th removal of FTB's

assets was triggered by concerns that Mark Ryan or the IRS might have locked FTUSA out of the

Boeckman facility.  Id.  Mark Ryan filed a police report, but the police dropped the investigation

after concluding that the dispute was civil in nature.  Id.  FTUSA returned some files that Mark

Ryan requested, but nothing else.  Id. at 12.  Even after the March 27th event, the parties still

continued to work together to close the deal until this lawsuit was filed on June 16, 2009.  Id.

FTUSA continues to use FTB's assets, even though the deal never closed.  Id.

                                    STANDARDS

    Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

Defendant FTUSA moves for summary judgment on all eight of Plaintiffs' claims, two of which Plaintiffs also cross move for summary judgment. I will discuss these eight claims first, and then continue with FTB et al's cross motion for partial summary judgment on all of FTUSA's affirmative defenses and five of FTUSA's counterclaims.

I.     Plaintiffs FTB and Mark Ryan's Claims

5 - OPINION & ORDER

A.      Claim One - Tresspass to Land

Plaintiffs claims that FTUSA and its agents entered its Wilsonville facility without permission on March 27, 2009.  Oregon defines trespass as occurring when a person intentionally "(a) enters land in the possession of the other, or causes a thing or third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." Restatement (Second) Torts § 158 (1965); Douglas v. Humble Oil & Refining Co., 445 P.2d 590, 591 (Or. 1968) (citing Restatement (Second) Torts § 158)).  Consent is the possessor's willingness to let another enter or remain on the land and can be either express or implied. Denton v. L. W. Vail Co., 541 P.2d 511 (Or. Ct. App. 1975); Restatement (Second) Torts § 330 cmt. c.

Both Plaintiffs and FTUSA have moved for summary judgment on this claim.  There is no dispute that Mark Ryan permitted FTUSA to use the Boeckman facility in Wilsonville. FTUSA MSJ 14; FTB Opp'n 8.  The issue is whether FTUSA exceeded the scope of the permission when FTUSA removed assets and equipment from the Boeckman facility on March 27th.  Douglas, 455 P.2d at 591 (trespass found when authorization to enter for a specific purpose was exceeded).  FTUSA asserts that it had permission to use the facility and the equipment to complete the installation projects.  FTUSA MSJ 14.  FTB argues that the permission to use the Boeckman facility did not include entering the facility to remove all the assets and equipment without closing a deal.  There is genuine dispute of material fact with respect to the scope of Mark Ryan's permission to FTUSA regarding the use of the Boeckman facility.  Summary judgment is denied for both FTUSA and FTB.

B.      Claim Two - Conversion

6 - OPINION & ORDER

Plaintiffs allege that FTUSA took without permission its property (equipment, computers, proprietary information, client files, and artwork) on March 27th. Compl. ¶27. In Oregon, conversion is defined as follows:

> (1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.
>
> (2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
>
> (a) The extent and duration of the actor's exercise of dominion or control;
> (b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
> (c) the actor's good faith;
> (d) the extent and duration of the resulting interference with the other's right of control;
> (e) the harm done to the chattel;
> (f) the inconvenience and expense caused to the other.

Mustola v. Toddy, 456 P.2d 1004, 1007 (Or. 1969) (quoting Restatement (Second) Torts § 222A, at 431).

Plaintiffs and FTUSA have both moved for summary judgment on this claim. FTUSA argues that it lawfully acquired the equipment because Mark Ryan gave it permission. There is no dispute that Mark Ryan gave FTUSA permission to use the equipment to continue with the installation projects. FTB Opp'n 12; FTUSA MSJ 16. Similar to the trespass claim, FTB claims that although it gave FTUSA permission to use the equipment, the permission would last until the deal between the parties was finalized, but not if the deal was rejected. FTB Opp'n 12; Decl. of Mark Ryan in Opp'n of FTUSA's Mot. for Summ. J. ("Ryan Decl.") ¶¶8, 13. FTUSA counters that FTB did not impose any restrictions on the use of the equipment. It also has produced evidence that FTB alerted John Deere Credit that it had "transferred all of its

7 - OPINION & ORDER

equipment assets to Field Turf USA and no longer has the equipment in its possession." FTUSA MSJ Memo 16. FTUSA has maintained possession of the equipment, but Mark Ryan has not been paid for the equipment.

FTUSA also argues that because it had lawfully acquired the property, FTB needed to demand the property in order to maintain a conversion claim. FTUSA MSJ 16. "When a defendant acquires possession of the chattel lawfully..., a conversion may result upon the refusal to redeliver the chattel on demand by the owner." Leibrecht v. Hawkins, 731 P.2d 1057, 1059 (Or. Ct. App. 1987). Although Ryan asked for some files, which FTUSA returned, he did not ask for the other assets. Id. This argument is premised on the fact that FTUSA had lawfully acquired the property. FTUSA also states that it has escrowed more than $200,000 as rent for use of the equipment.[1] Id. There is a genuine dispute of material fact as to whether FTUSA had lawfully acquired the equipment. Summary judgment is denied for both FTUSA and Plaintiffs.

C.    Claim Three - Fraud or Misrepresentation

Plaintiffs claim that FTUSA made false and material misrepresentations related to its intention to purchase FTB. Compl. ¶32. In Oregon, the elements of fraud are:

(1) [A] representation;
(2) its falsity;
(3) its materiality;
(4) the speaker's knowledge of [the representation's] falsity or ignorance of its truth;
(5) [the speaker's] intent that it should be acted on in the manner reasonably contemplated;
(6) the hearer's ignorance of its falsity;
(7) [the hearer's] reliance on its truth;

---

[1]Plaintiffs object to this fact as irrelevant and hearsay, and requests that discovery be allowed on this issue. At this juncture, I cannot determine whether this fact is relevant. Discovery is re-opened for the limited purpose of discovering facts with respect to the escrow account.

8 - OPINION & ORDER

(8) the hearer's right to rely on the representation; and

(9) damage.

Webb v. Clark, 546 P.2d 1078, 1080 (Or. 1976).  A plaintiff must prove that defendant did not

intend to honor its representation at the time that the representation was made.  Commc'ns Group

v. GTE Mobilnet, 871 P.2d 502, 504 (Or. Ct. App. 1994).  "A fraudulent intent not to perform

may not be inferred from the mere fact of the eventual failure to perform."  Id.

In 2006, the Mark Ryan and FTUSA began to discuss a deal in which the two companies

would "vertically integrate".  FTUSA MSJ 5.  In mid-2008, Mark Ryan and Joe Field, then CEO

of FTUSA, advanced discussions of the sale.  Id. at 5.  Plaintiffs have presented the following

facts to infer that FTUSA was misleading Plaintiffs with respect to the sale:  (1) on March 17,

2009, FTUSA suggested to Ryan that it would enter a month to month rental for the Boeckman

facility and (2) also on March 17th, an email among FTUSA executives shows that FTUSA had

already decided to move out of the Boeckman facility.  Drawing reasonable inferences favorable

to the non-moving party, these facts could show that FTUSA made a misrepresentation related to

the purchase of FTB.  As pled, Plaintiffs' claim is broad enough to encompass statements made

throughout the negotiations, and is not restricted to the early discussions in 2006 or fall 2008.

FTUSA's motion on this claim is denied.

D.      Claim Four - Intentional Interference with Business Relationships

Plaintiffs claim that FTUSA interfered with and destroyed existing economic

relationships with FTB's customers.  Compl. ¶36.  In Oregon, to state a claim for intentional

interference with economic relations, a plaintiff must allege each of the following elements:

(1) the existence of a professional or business relationship (which could include, e.g., a
contract or a prospective economic advantage);

9 - OPINION & ORDER

(2) intentional interference with that relationship or advantage;
(3) by a third party;
(4) accomplished through improper means or for an improper purpose;
(5) a causal effect between the interference and the harm to the relationship or prospective advantage; and
(6) damages.

Allen v. Hall, 974 P.2d 199, 202 (Or. 1999). FTUSA argues that Plaintiffs have not presented any evidence that FTUSA interfered with customer relationships. FTUSA MSJ 22. In its response to FTUSA's motion, Plaintiffs concede that their complaint is stated too narrowly–that they meant to plead vendor and lessor relationships as well. FTB Opp'n 15.

With respect to customer relationships, Plaintiffs claim that FTUSA interfered with the "Hoover Park" client by refusing to deliver the carpet for the project. FTUSA MSJ 22. Because the carpet was not delivered on time, the contract went into default and FTB incurred liquidated damages–though these damages were later recalled. Id. at 23. Plaintiffs have not produced evidence to any show contact between FTUSA and Hoover Park. Quite the opposite, on March 5th, Mark Ryan sent a letter to the Hoover Park customer stating that FTB was unable to perform the contract. Decl. of Stacy Owen in Supp. of FTUSA's Mot. for Summ. J. ("Owen Decl.") Ex. 25. He explained that FTB was insolvent and requested that the contract be cancelled. Id.

Hoover Park is the only customer relationship mentioned in support of this claim. Plaintiffs would like the court to infer that FTUSA interfered with the Hoover Park relationship by withholding the carpet, so that FTB's financial situation would be exacerbated. FTB Opp'n 16. This inference is unwarranted. Even viewing the facts in a light most favorable to Plaintiffs, they have not presented sufficient evidence to create a genuine issue of material fact. If anything, the March 5th letter from Mark Ryan to the Hoover Park customer shows that the relationship

failed because FTB had become insolvent.  FTUSA's motion on this claim is granted.

      E.     Claim 5 - Breach of Fiduciary Duty

Plaintiffs claim that FTUSA owed them the fiduciary duties of "good faith, fair dealing, reasonable care, undivided loyalty and full, frank disclosure" as a prospective purchaser of FTB. Compl. ¶41.  Plaintiffs allege that FTUSA breached this duty by removing FTB's assets on March 27th and by taking over FTB's business.  Id. at ¶42.  A fiduciary relationship exists if there is a relationship of special confidence, which involves one party being bound to act in good faith toward another party and by taking regard of the interests of the other party.  Starkweather v. Shaffer, 497 P.2d 358, 361 (Or. 1972).  To establish a fiduciary relationship, the parties must have a special relationship in which the "nature of the parties' relationship itself allows one party to exercise control in the first party's best interests."  Bennett v. Farmers Ins. Co. of Or., 26 P.3d 785, 799 (Or. 2001).  Once a fiduciary relationship is deemed to exist, the fiduciary duty owed depends upon the nature of the relationship.

Plaintiffs again make arguments beyond that alleged in their complaint.  In the complaint, they claim that the fiduciary duty arises because FTUSA is a prospective purchaser.  But in their response to FTUSA's motion, they argue that the duty arises from the long-standing ten-year relationship that the parties had as manufacturer and installer.  FTB Opp'n 17.  I will analyze this claim as pled.

FTUSA argues that the parties dealt with each other at arm's length by using separate attorneys.  FTUSA MSJ 25.  Even FTB admits that the negotiations for the sale were at arm's length.  FTB Opp'n 18.  The relationship between FTUSA and Plaintiffs was not subject to fiduciary duties.  There are simply no facts from which one can even infer that as a seller,

FTUSA owed a fiduciary duty to Plaintiffs.  FTUSA's motion on this claim is granted.

     F.     Claim Six - Misappropriation of Trade Secrets

     Plaintiffs claim that FTUSA misappropriated its trade secrets, such as customer lists, business contacts, and other proprietary information.  Compl. ¶45.  The Oregon Uniform Trade Secrets Act, ORS 646.461 - 646.475, defines a trade secret as:

> [I]nformation, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

ORS 646.461(4).  Misappropriation occurs when a person acquires a trade secret but "knows or has reason to know" that the acquisition was acquired by "improper means."  ORS 646.461(2)(a).  Misappropriation also occurs when a person discloses or uses a trade secret without express or implied consent.  ORS 646.461(2)(b)-(d).

     FTUSA argues that there is no misappropriation of trade secrets because (1) FTUSA provided customers to FTB, so it did not have any proprietary customer lists, (2) FTB gave FTUSA permission to use its computers, records, and information once FTUSA took over FTB's business, (3) the skill and knowledge of FTB's former employees do not qualify as trade secrets, and (4) regardless of all of the above, FTB made no effort to ensure the secrecy of any of its alleged trade secrets.  FTUSA MSJ 27-29.  The dispositive fact is that Plaintiffs admit they never required FTUSA to sign a confidentiality agreement before giving FTUSA full access to FTB's vendor lists, equipment, and other alleged proprietary information.  FTB Opp'n 20.  The fact that

there was no effort to maintain the secrecy of any alleged trade secrets defeats this claim entirely.

One cannot claim a trade secret if it was not maintained as a secret.  ORS 646.461(4).

Plaintiffs also argue that FTUSA obtained trade secrets from Robert Gloeckner, the former general manager of FTB.  Plaintiffs argue that according to the employee handbook, Gloeckner had a duty to maintain the confidentiality of any FTB records, reports, and documents. FTB Opp'n 20.  As stated above, FTUSA argues that the vendor lists were made available to FTUSA without any restrictions.  As for the installation expertise of Gloeckner, in <u>Western Med. Consultants, Inc. v. Johnson</u>, the court found that former employees may use the "knowledge [that] arose from general know-how, skill and experience gained while employed by [a prior employer]" while working for a subsequent employer.  835 F. Supp. 554, 557 (D. Or. 1993), aff'd 80 F.3d 1331 (9th Cir. 1996).  Because Plaintiffs did not maintain the secrecy of the alleged trade secrets, FTUSA's motion on this claim is granted.

G.    Claim Seven - Willful Maintenance of a Monopoly

FTB claims that FTUSA has willfully maintained a monopoly in the manufacture and installation of field turf in the Western United States.  Compl. ¶49-51.  Under Section 2 of the Sherman Act, "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony[.]"  15 U.S.C. § 2.  In order to state a claim for monopolization under section 2, a plaintiff must prove that "(1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury."  <u>Cost Mgmt. Servs. v. Washington Natural Gas Co.</u>, 99 F.3d 937, 949 (9th Cir. 1996).

13 - OPINION & ORDER

FTB argues that the relevant market is the manufacture and installation of field turf, while FTUSA argues that it is only the manufacture of field turf because it subcontracts its installation work.  FTB Opp'n 23; FTUSA MSJ 32.  There are facts to support both positions.  Mr. Gloeckner provided testimony that manufacturers and installers work together, not as one unit to compete for bids.  FTUSA MSJ 32.  On the other hand, FTB points out that the product that FTUSA provides is an installed unit (not field turf alone), even though it may use different installers.  FTB Opp'n 23.  The parties also dispute the geographical area of the relevant market. Plaintiffs claim that the geographical area is the Western United States, while FTUSA argues that it is a national company.

With respect to monopoly power, "[a] mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme. The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price." Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1439 (9th Cir. 1995).  FTUSA's market share depends on the geographic region.  In the Western United States, FTB claims that FTUSA has a 70-90% market share.  According to FTUSA, that figure is misleading because of the limited geographic scope and that the data is limited to a single year.  FTUSA Reply, 17. Although market share is relevant, FTB has not produced evidence that competitors are barred from entering the relevant market, whether it be manufacturing and installation, or manufacturing alone.

As for the third element, anticompetitive conduct that causes injury, Plaintiffs argue that FTUSA wanted to acquire FTB so that it could eliminate Grass Valley Turf, another installer of

14 - OPINION & ORDER

synthetic turf that FTUSA had employed in the past.  FTB Opp'n 25.  There is no mention of

how many other installers exist in the Western United States (assuming *arguendo* that this is the

relevant market) or that FTUSA actually succeeded in eliminating Grass Valley Turf as a

competitor.  Plaintiffs also provide a long list of examples of how FTUSA was anticompetitive

towards FTB.  The problem, however, is that Plaintiffs have only alleged injury to themselves, as

opposed to competition as a whole or that prices have been negatively impacted.  "The courts

have repeatedly observed that 'the antitrust laws protect competition, not competitors.'"

SmileCare Dental Group v. Delta Dental Plan, 88 F.3d 780, 784, n3 (9th Cir. 1996).  Plaintiffs

have not provided sufficient evidence to create a genuine issue of material fact for its willful

monopoly claim.  FTUSA's motion is granted for this claim.

      H.     Claim Eight - Breach of Contract

     Plaintiffs claim in alternative to its third, fourth, fifth, and sixth claims, that FTUSA

breached its contract with Plaintiffs for $2,150,000, which included the purchase of FTB's assets

and a consulting contract for Mark Ryan.  Compl. ¶38.  "[B]efore there can be a valid contract

there must be a meeting of the minds as to all of its terms; that nothing can be left for future

negotiation, and that if any portion of the contract is not agreed upon . . . there is no contract."

Phillips v. Johnson, 514 P.2d 1337, 1343 (Or. 1973).  However, "[i]f all the material terms which

are to be incorporated into a future writing have been agreed upon, it may be inferred that the

writing to be drafted and delivered is a mere memorial of the contract, which is already final by

the earlier mutual assent of the parties to those terms."  Dalton v. Robert Jahn Corp., 146 P.3d

399, 408 (Or. Ct. App. 2006) (citations omitted).

     On January 18, 2009, Mark Ryan and FTUSA had come to an agreement of $2,150,000

for the purchase of FTB's assets and a seven-year consulting for Mark Ryan.  Owen Decl. Ex. 4 at 1.  This agreement was the culmination of several email exchanges in which the parties had proposed several other purchase prices.  Id.  I find that a contract existed on January 18th.  The material terms of the contract had been finalized:  the purchase price of FTB's assets for $750,000 and the value of Mark Ryan's consulting contract at $1,400,000.  Id. at 1-2.  Proposals to modify the contract terms–such as providing more cash at closing–did not negate the formation of this contract.  Ken Hood Constr. Co. v. Pac. Coast Constr., Inc., 120 P.3d 6, 13 (Or. Ct. App. 2005) (essential terms may be binding even though parties continued to bargain in good faith over the remaining terms).

Even though I find that a contract existed, Plaintiffs' claim does not survive summary judgment.  In the January 18th email, FTUSA stated unequivocally that board of director approval was still needed because of the large amount of money involved.  Id. at 1.  "Conditions precedent are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available."  Dan Bunn, Inc. v. Brown, 590 P.2d 209, 215 (Or. 1979).  The board of directors approval never happened.  Because this condition precedent failed to occur, FTUSA was not required to perform, and there can be no breach of contract.  Plaintiffs argue that board approval was not a condition precedent, but a mere formality.  FTB Opp'n 32.  Plaintiffs have presented no evidence to support this allegation. FTUSA's motion on this claim is granted.[2]

---

[2]In light of this ruling, FTUSA's 3rd Counterclaim for Breach of Contract (Sale of FTB's Equipment) is dismissed as well.

II.     FTUSA's Affirmative Defenses and Counterclaims

FTUSA brought several counterclaims and third-party claims against FTB, Mark Ryan, Crystal Ryan, Boeckman Properties, and Gulf Pacific Company (collectively "FTB et al"). FTB et al has cross moved for summary judgment on all 13 of FTUSA's affirmative defenses. FTB et al has also cross moved for summary judgment on the following counterclaims: fraud/misrepresentation, conspiracy to extort money, breach of fiduciary duty (derivative action), conversion/embezzlement (derivative action), and conspiracy to commit embezzlement/conversion (derivative action).

A.     FTUSA's Affirmative Defenses

1.     1st Affirmative Defense - Estoppel

FTUSA brings this defense with regards to Plaintiffs' 1st, 2nd, 5th and 6th claims of trespass, conversion, breach of fiduciary duties, and misappropriation of trade secrets. The estoppel defense is based on FTUSA's allegation that Mark Ryan consented to FTUSA's use of FTB's equipment and facility while the purchase deal was being negotiated. Answer ¶64. As explained earlier in this opinion, there is a genuine dispute of material fact as to the scope the permission granted by Plaintiffs. FTB et al's motion on this affirmative defense is denied.

2.     3rd Affirmative Defense - Unclean Hands

FTB et al argue that the unclean hands doctrine is inapplicable to FTUSA's claims for trespass and conversion. In its response, FTUSA concedes this argument. However, FTUSA does not concede this affirmative defense against the rest of Plaintiffs' claims. Thus, the unclean hands doctrine is dismissed with respect to claims one (trespass) and two (conversion), but remains a valid defense against claim three (fraud/misrepresentation), the only other claim that

survives FTUSA's motion for summary judgment.

        2.      FTUSA's Other Affirmative Defenses

FTB et al argue only generally against FTUSA's other 11 affirmative defenses, stating that they are simple denials of torts. FTB MSJ 14. For example, FTUSA's fourth affirmative defense states that "FieldTurf has not trespassed on the premises leased by [FTB] from Boeckman Properties inasmuch as FTUSA was given unrestricted access thereto." Answer ¶67. Much of the other affirmative defenses are similarly stated.[3] Id. at ¶¶68-76. FTUSA argues that FTB et al have not met their burden of showing no genuine dispute of material fact. FTUSA Opp'n 14. I agree that most of these affirmative defenses are denials or assertions of fact that would negate an element in Plaintiffs' claims against FTUSA. With respect to Plaintiffs' claims four, five, six and eight, the following affirmative defenses are moot because summary judgment has been granted in favor of FTUSA:

> 10th Affirmative Defense [to Plaintiffs' claim four]: Plaintiffs have failed to identify any business relationships which have been interfered with and have failed to state any acts constituting intentional interference with any business relationships.

> 11th Affirmative Defense [to Plaintiffs' claim five]: FTUSA does not, and has never owed any fiduciary duty to Plaintiffs or their creditors.

---

    [3]Other affirmative defenses: (5th) FTUSA did not convert any of FTB's equipment, computers, proprietary information, trucks, client files, or artwork; (6th) FTUSA returned any and all of FTB's property that FTB requested be returned; (7th) FTUSA does not, and never has asserted any ownership or possession of rights in equipment, computers, proprietary information, trucks, client files, or artwork, let alone any other property alleged to be owned by FTB; (8th) FTB's Second Claim For Relief [Trespass] is barred because FTB failed to request the return of chattels after consenting to FTUSA's use -- even after FTUSA inquired about returning it; and (9th) FieldTurf has not made any false representations to Plaintiffs regarding its intent to Plaintiffs associated with the purchase of Builders' assets. Answer ¶¶68-72.

12th Affirmative Defense [to Plaintiffs' claim six]:  Plaintiffs' Sixth Claim For Relief is barred because the information purported to be trade secrets was known and available to FTUSA or made available by Plaintiffs to FTUSA.

13th Affirmative Defense [to Plaintiffs' claim eight]:  Plaintiffs' Eighth Claim For Relief is barred because the contract alleged to be entered into between Plaintiffs and FTUSA was never entered into.

Because there remains a genuine dispute of material fact as to the second, fourth, fifth, sixth, seventh, eighth, and ninth affirmative defenses, I deny FTB et al's motion with respect to these defenses.

> B.    FTUSA's Counterclaims

FTB et al has moved for partial summary judgment on the following counterclaims: fraud/misrepresentation, conspiracy to extort money, breach of fiduciary duty (derivative action), conversion/embezzlement (derivative action), and conspiracy to commit embezzlement/conversion (derivative action).

> 1.    Fourth Counterclaim - Fraud/Misrepresentation

FTUSA claims that throughout the negotiations for the purchase of FTB's assets, Mark Ryan failed to disclose that FTB was burdened with liens, debts, and other obligations.  Answer ¶179.  FTUSA asserts that had it known about FTB's financial burdens, it would have stopped negotiations.  Id. at ¶181.  As stated earlier, in Oregon, the elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of [the representation's] falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted on in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) the hearer's right to rely on the representation; and (9) damage. Webb v. Clark, 546 P.2d 1078, 1080 (Or. 1976).

19 - OPINION & ORDER

FTUSA claims that Mark Ryan committed fraud by misrepresenting the health of FTB during negotiations for the sale of the business.  For example, FTUSA claims that it did not know about the $994,447 IRS tax lien until after negotiations began.  FTUSA Opp'n 15.  Through reassurances from Mark Ryan that the lien would be paid, FTUSA continued to negotiate.  Id.  It was not until after the parties agreed on a purchase price that FTUSA learned from an FTB sales representative that the tax lien had still yet to be paid.  Id.  Other financial issues that FTUSA claims FTB hid include, a tax audit by Washington State and several union trusts lawsuits in California.  Id.

There is no dispute that FTUSA discovered the IRS tax lien in October 2008.  FTB et al's Memo. in Supp. of Mot. for Partial Summ. J. ("FTB MSJ") 15.  As for the other financial troubles, FTB et al implies that FTUSA was aware of them because by January 2009, Mr. Gloeckner, FTB's general manager, had been working with FTUSA in anticipation of the purchase.  Id.  FTB et al also argues that FTUSA received a K-1 tax statement that would have shown FTB's financial situation.  Id.  FTUSA disputes this fact and produced a letter from September 2010 in which FTB had enclosed a 2008 K-1 statement.  FTUSA Opp'n 17; Decl. of Stacy Owen in Supp. of FTUSA's Opp'n to Mot. for Partial Summ. J. ("Second Owen Decl.") Ex. 10.  Finally, FTB implies that because FTUSA was only planning to purchase the assets of FTB, and take none of the liabilities, FTUSA would not have been affected by those liabilities anyway.  Id.  There is a genuine dispute of material fact as to when FTUSA learned about FTB's financial problems.  FTB et al's motion is denied for this counterclaim.

2.    Fifth Counterclaim - Conspiracy to Extort Money

FTB et al had moved to dismiss this claim earlier in this case, but Judge Haggerty denied

20 - OPINION & ORDER

the motion.  <u>Field Turf Builders, LLC v. Fieldturf USA, Inc.</u>, 2010 U.S. Dist. LEXIS 19741 (D.

Or. Mar. 4, 2010).  FTB had argued that a tort claim for extortion does not exist.  Judge Haggerty

was unwilling to declare whether such a claim exists in Oregon due to the few relevant decisions

that existed on the issue.  <u>Id.</u> at  at *5-6.  He cited a case in which Judge Coffin stated that "[i]t is

entirely unclear that a civil action for extortion is recognized by the Oregon courts."  <u>Id.</u> (citing

<u>May Trucking Co. v. Andrus Transp. Services, Inc.</u>, Case No. 05-716-TC, 2006 U.S. Dist.

LEXIS 42285, 2006 WL 1720536, *3 (D. Or. 2006) ("The court cannot say based on the cases

cited by the parties or on its own research that Oregon recognizes a cause of action for extortion,

coercion, or attempted extortion or coercion.").

FTB et al renew their argument that a civil extortion claim does not exist.  Since Judge

Haggerty's decision in March 2010, there appear to be no other cases that discuss this issue.

FTUSA has not brought forth any new cases in support either.  Given that there have not been

any new developments in the case law since Judge Coffin's skepticism for this tort, I decline to

recognize the civil tort of extortion.   FTB et al's motion on this counterclaim is granted.

       3.      Sixth Counterclaim  - Breach of Fiduciary Duty (Derivative Action)

FTUSA is a 5% owner of FTB.  It claims that Mark Ryan owed fiduciary duties to FTB,

and that as manager of FTB, he breached the duties of care and loyalty by violating the law when

he ignored federal tax obligations, paid his wife Crystal Ryan a yearly salary even though she

performed no duties for FTB, failed to pay important obligations such as union wages and

employee benefits to the union trust fund, improperly represented FTB pro se in a California

lawsuit, and authorized excessive partner distributions even as FTB incurred substantial debt.

Answer ¶¶196-200.

21 - OPINION & ORDER

FTB argues that FTUSA is not the proper party to bring a derivative action under Rule 23.1 of the Federal Rules. For the purposes of Rule 23.1, "[a]n adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class." Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir. 1990). The burden is on the party opposing the derivative action to show that the parties asserting the derivative action is inadequate. Guenther v. Pacific Telecom, Inc., 123 F.R.D. 341, 344 (D. Or. 1987).

Factors considered in determining the adequacy of a representative in a derivative suit include: (1) indications that the party advancing the derivative claims is not the true party in interest, (2) the claimant's unfamiliarity with the litigation and unwillingness to learn about the suit, (3) the degree of control exercised by the attorney over the litigation, (4) the degree of support received by the claimant from the other shareholders, (5) the lack of any personal commitment to the action on the part of the representative claimant, (6) the remedy sought by the claimant in the derivative action, (7) the relative magnitude of the claimant's personal interests as compared to the derivative action itself, and (8) the claimant's vindictiveness toward the opposing party. Id. These factors may be intertwined. Id.

In his March 4, 2010 Order, Judge Haggerty denied FTB's motion to dismiss the derivative claims based on the assertion that FTUSA was an inadequate representative. Field Turf Builders, 2010 U.S. Dist. LEXIS 19741, at *10. He reasoned that there was not a per se rule that prohibits shareholders from bringing both direct and derivative claims and that FTUSA appear to be the only ones uniquely situated to bring the derivative claims. Id. at *9. He also noted that there was no actual conflict (arising from FTUSA pursuing both direct and derivative

actions), but that FTB could renew this challenge if further discovery revealed otherwise.  Id. at
*10.

FTB et al argue that FTUSA is an inadequate representative because it "oversaw and
caused the collapse" of FTB, which presumably is in conflict to it representing the interests of
FTB.  FTB MSJ 19.  FTB also asserts that FTUSA has a large personal interest in the direct
claims, which conflicts with the derivative claims, and that it is vindictive towards the
counterclaim defendants.  FTUSA disputes that it caused FTB's collapse.  FTB et al has not met
its burden to show that FTUSA is an inadequate representative for the derivative claims.

With respect to the merits of the breach of fiduciary duty claim, there is a genuine issue of
material fact as to whether Mark Ryan breached the duties of care and loyalty.  Mark Ryan
claims that the salary paid to his wife was in lieu of his taking a salary and that he used his best
effort to resolve FTB's financial problems.  FTB MSJ 20.  FTUSA describes the large
distributions that Mark Ryan authorized for shareholders, despite the mountain of debt that FTB
faced.  FTUSA Opp'n 21.  In 2008, Crystal Ryan received $589,013, Mark Ryan received
$184,532, and Marv LaPorte received $765,720.  Id. at 22.  FTB et al's motion for this
counterclaim is denied.

4.       Seventh Counterclaim - Conversion/Embezzlement (Derivative Action)

FTUSA claims that Mark Ryan improperly removed funds from FTB for use in other
businesses for the Ryans' personal use.  Answer ¶208.  Mark Ryan ran four different businesses
that operated on a seasonal basis.  FTB MSJ 21.  He argues that all loans between the companies
were properly recorded and that he did not take more than what he was entitled.  Id.  FTUSA
disputes that paying Crystal Ryan a salary was proper, or that Mark Ryan only took his fair share

from FTB. FTUSA Opp'n 23-24. Because of this genuine dispute of material fact, FTB et al's motion for this counterclaim.

> 5.    Eighth Counterclaim - Conspiracy to Commit Embezzlement/Conversion (Derivative Action)

FTUSA claims that Mark Ryan, his wife Crystal, and Gulf Pacific conspired together to embezzle or convert FTB's funds. Answer ¶213. Similar to the other claims in which there are disputes about the propriety of how FTB's funds were used, there is a genuine dispute of material fact. FTB et al's motion on this counterclaim is denied.

## CONCLUSION

FTUSA's motion for summary judgment [#64] is granted and denied in part as follows:

Claim 1 Trespass - denied
Claim 2 Conversion - denied
Claim 3 Fraud/Misrepresentation - denied
Claim 4 Intentional Interference with Business Relationship - granted
Claim 5 Breach of Fiduciary Duty - granted
Claim Six Misappropriation of Trade Secrets - granted
Claim Seven Willful Maintenance of a Monopoly - granted
Claim Eight Breach of Contract - granted

FTB's motion for partial summary judgment [#70] is granted and denied in part as follows:

Claim 1 Trespass - denied
Claim 2 Conversion - denied
1st Affirmative Defense Estoppel - denied
3rd Affirmative Defense Unclean Hands - granted for trespass and conversion claims
2nd, 4th, 5th, 6th, 7th, 8th, 9th Affirmative Defenses - denied
4th Counterclaim Fraud/Misrepresentation - denied
5th Counterclaim Conspiracy to Extort Money - granted
6th Counterclaim Breach of Fiduciary Duty (Derivative Action) - denied
7th Counterclaim Conversion/Embezzlement (Derivative Action) - denied
8th Counterclaim Conspiracy to Commit Embezzlement/Conversion (Derivative Action) - denied


Further, FTUSA's 10th, 11th, 12th, and 13th affirmative defenses are dismissed as moot and

24 - OPINION & ORDER

FTUSA's 3rd Counterclaim for Breach of Contract (Sale of FTB's Equipment) is dismissed.

IT IS SO ORDERED.

Dated this __13th_____ day of October, 2011.

 /s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

25 - OPINION & ORDER